(No. 15062.—Judgment affirmed.)

THE PEOPLE *ex rel.* Frank Carson, County Treasurer, Appellee, *vs.* PETER J. MULDOON, Catholic Bishop of Rockford, Appellant.

*Opinion filed December 19, 1922—Rehearing denied Feb. 7, 1923.*

1. TAXES—*what determines exemption of property from taxation.* To bring property within the uses specified in the constitution for its exemption from taxation the words employed are to be taken in their ordinary acceptation, and in determining whether the property falls within the exemption the primary use will control and not a secondary use, and in every case the exemption rests upon a public benefit from the use of the property.

2. SAME—*when property is used for religious purpose.* In the ordinary understanding of the term, "religion" means the formal recognition of God by members of societies and associations, and as applied to the uses of property a religious purpose includes a use of such property by a religious society or body of persons as a place for public worship, Sunday school and religious instruction.

3. SAME—*a parsonage is not exempt as property devoted to religious use.* The residence of a priest, rector or pastor, although it is directly connected with the pastor's work or the work of the church, is not exempt from taxation as property used for religious purposes.

4. SAME—*property used as a home for nuns is not exempt from taxation.* Property the primary use of which is a home for nuns who have renounced all connection with the world and the public

and are maintained principally by charity is not exempt from taxation as property used for religious purposes, even though, as incidental to such primary use, there is an outside chapel on the premises to which the public may be admitted.

5. STATUTES—*words should generally be given their ordinary meaning.* The words used in a statute are to be given their ordinary meaning in general and popular use unless the court is certain that it is following the legislative intent by giving them a different meaning.

APPEAL from the County Court of Winnebago county; the Hon. FRED E. CARPENTER, Judge, presiding.

HYER & GILL, for appellant.

WILLIAM JOHNSON, State's Attorney, and A. B. LOUISON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Frank Carson, county treasurer, applied to the county court of Winnebago county for judgment, with order of sale of a tract of land containing 11.64 acres on the west bank of Rock river, adjoining the city of Rockford on the south, delinquent for general taxes of 1921. The appellant, Peter J. Muldoon, Catholic Bishop of Rockford, filed his objection on the ground that the property was exempt, alleging that it was purchased by him for the purpose of providing a monastery for an order known in the Catholic church as the Poor Clares; that prior to April 1, 1921, the order of Poor Clares occupied the premises, which were improved with two houses and out-buildings, and since said time the property has been known as the Monastery of the Corpus Christi; that the organization was essentially a religious one, having no other desire or function but self-denial and prayer; that the organization consisted of a mother superior and about fifteen associate sisters, having no desire other than manual labor and prayer, and that all the property had been used and devoted exclusively to the

support of the monastery and the carrying on of the religious work of the order known as the Poor Clares. Upon a hearing the objection was overruled and judgment was entered, from which this appeal was prosecuted.

Historically the Poor Clares of the Order of St. Clare was organized in the year 1212 in Italy by St. Clara, who from religious zeal gave up wealth and worldy position and she and her followers accepted vows of obedience, chastity, poverty and seclusion from the public. The order was instituted in the United States in 1875, and the branch of the order to which the Rockford monastery belongs not only impose three ordinary vows of poverty, chastity and obedience, but also a vow of enclosure, which cuts them off from all intercourse with the outside world and imposes upon them silence, except during a short daily recreation period.

The hearing of the objection was upon a written stipulation stating the following facts: Peter J. Muldoon, Catholic Bishop of Rockford, acquired title to the premises by warranty deed on December 19, 1919, and holds the property for the use and occupancy of the nuns of the Order of St. Clare, or the Poor Clares. On March 1, 1920, the nuns of the order took possession of the property and have occupied the same continuously since that time for the purposes of the order. The property is improved with two large brick buildings and a small brick building, a barn and outbuildings, and a tight high board fence eight feet high surrounds the entire premises, except a lawn in front of the building of approximately half an acre. The order of which the nuns are members is what is called a contemplative order, and they spend a major portion of their time in prayer and meditation. Each one has taken a vow of poverty, chastity and obedience. They have no activities or duties in connection with the public or outside of the cloister and are not permitted to leave the cloister. They are not permitted to hold property in their own names, and having gone into the cloister they are there for life and do not

even own the clothes they wear. They depend for their support mainly on the charity of the public, but some income is made from making ecclesiastical vestments, which is a very small part of their support, and they live on what they receive in charity from the public and what they can derive from the land. They cultivate a portion of the land to supply themselves with vegetables, keep a cow for their supply of milk, and raise some fowls and some little fruit on the property. They do all the work themselves in caring for the buildings and cultivating the land, attending the fowls and the cow. The order is authorized by the Catholic church, and aside from the actual work of taking care of the buildings and land the nuns lead a life of prayer and meditation applying to all the people of the world, regardless of creed or sex. The manual work is for the purpose of exemplification of the humility and dignity of labor and to assist in support of the monastery. The order was instituted in the Catholic diocese of Rockford on March 20, 1916, consisting at that time of two nuns, and at the time of the hearing there were fourteen nuns, together with three novices and five preparing for entrance in the cloister. In the basement of one of the buildings is a chapel for devotion and the mass, and the rest of the buildings are used for prayer, meditation, labor, recreation, kitchen, dining and sleeping rooms for the nuns and novices. The chapel is divided into two parts, the inside chapel for the use of the nuns and an outside chapel for the use of the public.

The constitution gives to the legislature power to exempt from taxation property devoted to certain specified uses, all of which have some direct and immediate relation to the public and carry with them compensations justifying the exemption. In the case of property of the State, counties and municipal corporations, any taxes imposed would be paid by the body of tax-payers. In the case of school and charitable purposes, the general public is relieved from supplying those things which otherwise would have to be

provided by the public, and the burden of taxation is thereby lessened. The use of property for religious purposes tends to conditions affording compensation for the exemption, which is not a mere gift to religion but for a public purpose. In every case the exemption rests upon a general public benefit. It is the settled rule that words used in a statute are to be given their ordinary meaning in general and popular use unless the court is certain that it is following the legislative intent in giving them a different meaning. (*Way* v. *Way,* 64 Ill. 406; *Chudnovski* v. *Eckels,* 232 id. 312; *Culver* v. *Waters,* 248 id. 163.) To bring property within the uses specified in the constitution the words employed are to be taken in their ordinary acceptation, and in *People* v. *Deutsche Gemeinde,* 249 Ill. 132, the court said that in the common understanding and in its application to the people of this State religion means the formal recognition of God as members of societies and associations, and as applied to the uses of property a religious purpose means a use of such property by a religious society or body of persons as a stated place for public worship, Sunday schools and religious instruction. This was not stated as inclusive of everything that might in the future be regarded as a use for religious purposes but as illustrative of the nature of such use. In determining whether property falls within the terms of the exemption the primary use will control and not a secondary or incidental use. (*Grand Lodge A. F. and A. M.* v. *Board of Review,* 281 Ill. 480.) The primary use of a school house is for education, and an occasional use for a lecture or social affair will not destroy the exemption. Primary use of a church building is public worship, and its occasional use for some other purpose or a minor use for social functions will not render it liable to taxation. On the other hand, if the primary use is secular, the fact that a portion is incidentally used for religious purposes will not make it exempt from taxation. It was on this ground

that it was held in *People* v. *First Congregational Church,* 232 Ill. 158, and *First Congregational Church of DeKalb* v. *Board of Review,* 254 id. 220, that the primary use of a church parsonage being as a home for the pastor it was not exempt, although it was directly connected with the pastor's work or the work of the church. It is equally clear that the primary use of the property in this case is as a residence for the devoted women who have renounced all the affairs of this world and all connection therewith and devoted their lives to prayer, worship, penance, meditation, self-discipline and interceding for all of the people of the world, regardless of race, sex, religious belief or condition. Under their vow they have gone into seclusion and separated themselves entirely from the public and are maintained by charity, except for what they are able to contribute by their work. There is a chapel used exclusively by the nuns, and the existence of an outside chapel to which the public may be admitted is secondary or incidental to the principal use of the property. The fact that there are a number of nuns engaged in prayer and meditation and following the same practices of penance and contemplation is of no importance, since the number so engaged does not make that a religious purpose which otherwise would not be. The nuns have no relation, near or remote, to the public but are completely separated and secluded from the world, and are not in any manner connected with public worship, religious instruction or public religious observances. There is no ground upon which this property can be placed on a different footing from the residence of a priest, rector or pastor, and it is settled that such property is not exempt.

The judgment is affirmed.          *Judgment affirmed.*