EVANGELICAL TEACHER TRAINING ASSOCIATION, Plaintiff-Appellee, *v.* JOHN LOTUS NOVAK, Du Page County Treasurer, Defendant-Appellant.

Second District   No. 82—822

Opinion filed September 28, 1983.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (George J. Sotos, Assistant State's Attorney, of counsel), for appellant.

James M. Huck, Jr., and Mark N. Pera, both of Huck & Walsh, of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The treasurer of Du Page County appeals from a judgment which found that the property of the Evangelical Teacher Training Association, an Illinois Not-for-Profit Corporation (ETTA), was not used entirely for religious purposes and thus was not entitled to tax exemption for the 1981 tax year.

Between 1977 and 1980 ETTA's headquarters in Wheaton were exempted from real estate taxes. In 1981, the supervisor of assessments for Du Page County filed a complaint with the Du Page County Board of Review challenging the exemption on the basis that the property was not used exclusively for religious purposes. (Ill. Rev. Stat. 1979, ch. 120, par. 500.2.) ETTA then filed a complaint in the circuit court to enjoin the revocation of its tax exempt status and the collection of the taxes.[1]

ETTA was organized in 1930 by five Bible colleges. ETTA's purpose, as expressed in its charter, was to upgrade Christian education at varied academic levels including seminary studies, adult education, and Sunday school activities. Since 1930, it has grown to include 208 members. All of its members are approved schools, liberal arts and

---

[1]The parties have not raised any question of procedures under the provision of the Revenue Act of 1939, which applied to the denial of tax exempt status for 1981. (Ill. Rev. Stat. 1979, ch. 120, par. 589(6).) We therefore do not address the question.

Bible colleges, seminaries and Bible institutes.

Biannual corporate meetings are attended by delegates elected from each of its member organizations. Those delegates elect members who sit on ETTA's board of directors. Those directors appoint the corporate officers, and elect an executive committee.

Dr. Paul Loth, who began his professional career as a minister, and ETTA's president since 1961, testified at the hearing.

Loth and his son, a seminary graduate and a Ph.D., who also works for ETTA, have numerous speaking engagements at local chapel services and classes, as well as at national conferences on the subject of Christian education. They lecture at member colleges and give advice to local faculty on the training and preparation of seminary students. No fee is charged for these speaking services.

In addition to speaking and lecture services, ETTA prepares materials for 14 separate Bible course offerings, which include texts, cassette tapes, overhead masters, instructor's guides and lesson plans. The course offerings stress Bible lessons as well as Christian education techniques.

The materials are designed for use in seminaries, in adult education classes in local churches, and in Sunday schools. Qualified graduates of member schools are eligible to teach the courses. ETTA and member schools jointly issue a diploma to seminary graduates, certifying the graduate's entitlement to teach the courses, often referring such individuals to local congregations who have requested personnel to teach one of ETTA's courses at their church.

The courses themselves are written by faculty members at member schools, who receive a token honorarium for their efforts. The course material is then reviewed by an editorial committee, composed of faculty at member schools, and by two editors employed by ETTA. Once the editorial process is complete, the course material is translated into eight languages and distributed worldwide.

Course material packets are sold at $14.95, to those who can afford to buy them. ETTA has annual net sales of course materials and texts of $270,000. No royalty is exacted by it from members or nonmembers, relating to the teaching of its courses. Approximately half of the sales of teaching aid materials are distributed to nonmember schools.

ETTA does not produce materials to be distributed free of charge, but often donates its course and text materials to libraries and to "mission schools" without charge. Losses from such distribution are balanced by its income from "high volume textbook" sales.

In addition to sales, ETTA receives income in the form of $75 an-

nual membership fees, a $5 diploma fee, and a relatively small amount of private donations ($2,700 in the past 10 months of its fiscal year). Donations are placed into a Christian education scholarship fund to promote its teacher training program in Third World countries.

In the fiscal year between June 30, 1981, and June 30, 1982, ETTA encountered a net operating loss of $22,605.47, on gross income of $222,946. That loss was offset by interest income of $23,681, to yield a net income of $1,075.53. It maintains a "quasi-endowment fund" of $125,000, for use, *inter alia,* in the development of new course materials. The remaining $339,000 in book assets include such items as inventory, accounts receivable, and property holdings.

ETTA's sole administrative office is situated on its Wheaton, Illinois, property. All of its administrative functions originate from that office. Books and materials are shipped from a separate warehouse.

ETTA advertises its programs, but not its books and materials, in various Christian oriented magazines and at conventions (a booth is often rented at conventions for such purpose). It does not offer its materials for sale at workshops, which are oriented more toward selecting and enlisting teachers for programs at local churches. In contrast, ETTA may distribute its materials free of charge during seminars conducted at schools or conventions.

Section 19.2 of the Revenue Act of 1939 exempts from property tax "[a]ll property used exclusively for religious purposes, or used exclusively for school and religious purposes ***." (Ill. Rev. Stat. 1981, ch. 120, par. 500.2.) The question is whether the providing and promoting of a common course in teacher training which instructs on the general principles and specific methods of teaching with particular emphasis given to Bible studies, personal evangelism and missions, is within the "religious" exemption.

■ Whether a party has been organized and operated exclusively for an exempt purpose is to be determined from its charter and by-laws and the actual facts relating to its method of operation. *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 349.

In *People ex rel. McCullough v. Deutsche Gemeinde* (1911), 249 Ill. 132, 136-37, the court noted that, as applied to uses of property, "a religious purpose means a use of such property by a religious society or body of persons as a stated place for public worship, Sunday schools and religious instruction." In *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 238, the court with reference to *Deutsche Gemeinde,* however, said, "[t]his was not stated as inclusive of everything that might in the future be regarded as a use for religious purposes but as illustrative of the nature of such use." In *Scripture*

*Press Foundation v. Annunzio* (1953), 414 Ill. 339, 352, the court noted that "no decision of this court attempting to lay down an all-inclusive definition or specification of what constitutes a religious purpose," had been called to its attention. In so commenting, the court had before it *Deutsche Gemeinde*. (414 Ill. 339, 350-51.) See also *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 778-79.

The county claims ETTA's purposes are accomplished primarily by the sale of religious materials, teacher's training aids, and religious courses to member religious institutions for use in conducting religious activity of these institutions. It relies principally on *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, in which the religious exemption was denied. We find the case to be distinguishable in substantial respects. In *Scripture Press* the court noted that the incorporators and parties "were neither ordained ministers, pastors, nor representatives of any ecclesiastical or church organization." (414 Ill. 339, 355.) Here, the duties of ETTA are controlled by its members, each of whom are themselves religious organizations; and the operation is for the sole benefit of its member organizations and such other nonmembers individuals and organizations, who may avail themselves of the services, some of whom receive services and material free of charge or below cost. In *Scripture Press*, the court noted that the bylaws of the corporation gave private parties power to manipulate corporate activities, and conceivably, to distribute corporate assets to themselves either in the life of the corporation or upon dissolution. (414 Ill. 339, 357-58.) Here, upon dissolution ETTA's assets would be applied to a charitable purpose similar to that stated in its charter (Ill. Rev. Stat. 1981, ch. 32, par. 163a44) and no party could benefit personally.

The charter of ETTA states its corporate purposes

"We, representatives of Bible institutes, schools of the Bible, colleges and seminaries in the United States and its possessions (Alaska, Puerto Rico), Canada, Central America, Cuba and Philippines, in order to foster a closer cooperation among evangelical Christian institutions; to certify to the public our deep interest and concern for Christian education; to provide and promote a common course in teacher training which will give adequate attention to a study of the Bible, Personal Evangelism, and Missions as well as instruction in the general principles and specialized methods of teaching; to recognize and encourage the use of textbooks of approved orthodoxy, do hereby associate ourselves"

which is repetitive of the preamble to the constitution of the Evangelical Teacher Training Association.

In *Congregational Sunday School & Publishing Society v. Board of Review* (1919), 290 Ill. 108, where both the charitable and religious exemptions were involved, the court found that the dominant object of the Society was to spread the gospel by the written word and that it directly promoted its "religious, charitable and beneficent purposes" (290 Ill. 108, 123) by the distribution of its religious and moral books and Sunday school supplies. Thus, the purpose of the Society was accomplished by the effect on the minds and lives of the children and adults who read and studied its books and periodicals, enhanced by sending its workers and missionaries into areas where religious teaching had been neglected. 290 Ill. 108, 117-18. See also *Inter-Varsity Christian Fellowship v. Hoffman* (1978), 62 Ill. App. 3d 798, 801.

■ We recognize that both *Congregational Sunday School* and *Inter-Varsity Christian Fellowship* involve claims based on both religious and charitable purposes while this appeal is confined to only the claim for religious exemption. While the analysis required for charitable purposes may not be identical in all situations with that applicable to the religious exemption, it is a fair inference from the authorities that many of the same factors may be common to both claims for exemption in determining whether a religious or secular purpose is being performed. Thus in *Congregational Publishing*, the court noted, "they are so closely associated that we will discuss them together." *Congregational Sunday School & Publishing Society v. Board of Review* (1919), 290 Ill. 108, 112. See also *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 357-58.

■ While the county broadly asserts that ETTA's stated purpose to improve Christian education at academic and local levels, is only accomplished through the sale of its religious books and materials to others, who in turn conduct the "religious" oriented activity, the opposite is manifest from the record. The chief officers of ETTA are both ministers and doctors of education. Their activities are primarily directed toward the teaching and demonstration of teacher training techniques, as is disclosed by their exhaustive travel, lecture, and workshop schedule. These travel and speaking activities serve to directly accomplish ETTA's corporate purpose, the promotion of Christian education, in a manner which could not be achieved through the mere sale or distribution of its books and religious materials.

We conclude that ETTA has met its burden of proof to establish its qualification for exemption from real estate taxation pursuant to

section 19.2 of the Revenue Act of 1939. The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and VAN DEUSEN, JJ., concur.