BENEDICTINE SISTERS OF THE SACRED HEART, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 2—86—0949

Opinion filed May 13, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Bret A. Rappaport and Roma Jones Stewart, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Michael E. Kerns and Frank R. Martin, both of Righeimer, Martin, Bridewell & Cinguino, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, the Illinois Department of Revenue (Department), appeals from the judgment of the circuit court of Du Page County reversing the Department's denial of a religious use property tax exemption for a parcel of real estate owned by plaintiff, the Benedictine Sisters of the Sacred Heart (Benedictine Sisters). The single issue on appeal is whether the trial court erred in determining that the parcel in question, which contains three homes used as residences for the convent's three caretakers, meets the requirements for exempt status as set forth in section 19.2 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1981, ch. 120, par. 500.2).

On July 19, 1982, the board of review of Du Page County denied the exemption for the parcel. The Department agreed with the denial, and the Benedictine Sisters requested an administrative hearing. Sister Mary Regina Dubina, treasurer of the Benedictine Sisters, testified at the hearing before the Department's hearing officer, and her testimony is undisputed. The Benedictine convent was built in 1910. It consists of a main four-story building, a powerhouse containing furnaces and boilers, two garages, a shed, three residences, and a cemetery. The 47-acre complex is owned by the Benedictine Sisters, a semi-contemplative order, and includes housing for up to 83 members. Some of the members work off the premises as teachers, nurses, religious education coordinators, and youth and campus ministers. The majority of the members, however, are retired or semi-retired and live full-time on the convent grounds and help carry on the duties of the convent.

The parcel of real estate at issue here is part of the complex and contains three single-family homes which were built in the 1930's. The convent's three caretakers live in the three homes, at least one of them with his family. The auto mechanic repairs the cars, puts gas and oil in them, prepares the machinery, and also helps with the ground work. The chief engineer takes care of building repairs, the heating system, and emergencies such as electrical failure, plumbing problems, and problems with the elevator. The grounds keeper clears the roadways of snow in the winter and also mows the lawn, cuts down trees, and takes care of the shrubbery and the cemetery. All three men work five days a week, eight hours a day, and are on 24-hour call for emergencies. The chief engineer has an alarm in his home to alert him of any problems in the powerhouse. All three men

are required to live on the grounds by the Benedictine Sisters as a condition of their employment and live rent-free as part of their compensation. The homes do not produce any income for the convent.

Sister Dubina also testified that there are no members of the order who would be able to do the work performed by the three caretakers. She stated that the caretakers were required to live on the grounds because the members of the order would be helpless without them, as they are needed for emergencies that arise.

Following the administrative hearing, the Department's hearing officer determined that the three homes on the parcel in issue were used solely for residential purposes by the three caretakers, who were not in any way involved in the religious activities of the Benedictine Sisters. Therefore, the parcel was not used for religious purposes during 1982 and did not qualify for exemption.

The Benedictine Sisters filed a complaint for administrative review. After reviewing the undisputed facts presented to the hearing officer, the trial court reversed the Department's decision as contrary to law, against the manifest weight of the evidence, and as arbitrary and capricious. Following the Department's motion for rehearing, the trial court specifically found that the parcel was exempt from real estate taxation as property used exclusively for religious purposes, and the Department appealed.

■■ Because the relevant facts are undisputed, the issue of whether the property here is exempt is a question of law. (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240; see also *Caterpillar Tractor Co. v. Department of Revenue* (1963), 29 Ill. 2d 564, 566, 194 N.E.2d 257.) Thus, the decision as to whether the property is exempt "depends solely upon an application of the appropriate legal standard to the undisputed facts" (*Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315), and this court's role is to determine whether the trial court properly found that the property in question was entitled to tax-exempt status (see *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 311, 490 N.E.2d 161).

It is a well-settled rule of law in Illinois that all property is subject to taxation, unless specifically exempted by statute. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90, 134 N.E.2d 292; *Metropolitan Sanitary District v. Rosewell* (1985), 133 Ill. App. 3d 153, 155, 478 N.E.2d 1100.) The Illinois Constitution provides that exemptions may be made only for property "used exclusively" for certain purposes, stating:

"The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. \*\*\*." (Ill. Const. 1970, art. IX, sec. 6.) Section 19 of the Revenue Act of 1939 states that "[a]ll property described in Sections 19.1 through 19.24 to the extent therein limited, is exempt from taxation" (Ill. Rev. Stat. 1981, ch. 120, par. 500), and the applicable statute in 1982 at the time the tax exemption was denied, section 19.2 of the Act, described property exempt because of its use for religious purposes as follows:

"All property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages and not leased or otherwise used with a view to profit, including all such property owned by churches or religious institutions or denominations and used in conjunction therewith as parsonages or other housing facilities provided for ministers (including bishops, district superintendents and similar church officials whose ministerial duties are not limited to a single congregation), their spouses, children and domestic employees, performing the duties of their vocation as ministers at such churches or religious institutions or for such religious denominations, and including the convents and monasteries where persons engaged in religious activities reside." Ill. Rev. Stat. 1981, ch. 120, par. 500.2.

Statutes granting tax exemptions must be construed strictly in favor of taxation (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *People ex rel. Kassabaum v. Hopkins* (1985), 106 Ill. 2d 473, 476, 478 N.E.2d 1332), and the party claiming an exemption has the burden of proving clearly and conclusively that the property in question falls within the terms of the statute under which the exemption is claimed (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 390, 146 N.E.2d 73). Every presumption is against the intention of the State to exempt property from taxation (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 456, 419 N.E.2d 899; *Antioch Missionary Baptist Church v. Rosewell* (1983), 119 Ill. App. 3d 981, 982, 457 N.E.2d 500), and doubts concerning the applicability of the exemptions are to be resolved in favor of taxation (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455, 419 N.E.2d 899; *In re Mi-Jack Products, Inc.*

(1985), 136 Ill. App. 3d 721, 726, 483 N.E.2d 920).

■ Section 19.2 "allows an exemption only for 'property used exclusively for religious purposes.' " (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 96, 456 N.E.2d 73.) Property satisfies the exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose, even though it is also used for a secondary or incidental purpose. *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 98, 456 N.E.2d 73; *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 441, 465 N.E.2d 986.

Here, it is clear that the parcel containing the three caretakers' residences is not primarily used for religious purposes. Although the Illinois courts have not articulated an all-inclusive definition of what constitutes a religious purpose (see *Scripture Press Foundation v. Annunzio* (1953), 414 Ill. 339, 352, 111 N.E.2d 519; *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 238, 137 N.E. 863; *Evangelical Teacher Training Association v. Novak* (1983), 118 Ill. App. 3d 21, 24-25, 454 N.E.2d 836), section 19.2 specifically exempts certain "housing facilities provided for ministers *** , their spouses, children and domestic employees" as well as "convents and monasteries where persons engaged in religious activities reside" (Ill. Rev. Stat. 1981, ch. 120, par. 500.2).

The supreme court recently stated in *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 456 N.E.2d 73, that it could not determine that a parsonage could never qualify for exemption as property exclusively used for religious purposes solely because it is also used for residential purposes. (98 Ill. 2d 87, 100, 456 N.E.2d 73.) Based on the standard set out in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 278, 230 N.E.2d 846, which states that "[e]xemption will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the [religious] objectives, or efficient administration, of the particular institution," the supreme court in *McKenzie* determined that a parsonage qualifies for an exemption as follows:

"if it reasonably and substantially facilitates the aims of religious worship or religious instruction because the pastor's religious duties require him to live in close proximity to the church or because the parsonage has unique facilities for religious worship and instruction or is primarily used for such purposes."

(*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 99, 456 N.E.2d 73.)

Obviously, the caretakers' residences here do not meet either test, as the caretakers are not performing any religious duties and as no religious activities are carried on in the residences.

Following the *McKenzie* decision, the General Assembly in 1984 added a second paragraph to section 19.2 of the Act, which codifies this "parsonage exemption" by stating:

"A parsonage, convent or monastery shall be considered for purposes of this Section to be exclusively used for religious purposes when the church, religious institution, or denomination requires that the above listed persons who perform religious related activities shall, as a condition of their employment or association, reside in such parsonage, convent or monastery." (Ill. Rev. Stat. 1985, ch. 120, par. 500.2.)

Although this amendment was added subsequent to the tax year in question here, it was enacted in response to the *McKenzie* decision (83d Ill. Gen. Assem., House Proceedings, June 25, 1984, at 219) and was an attempt by the legislature to codify the supreme court's interpretation of the existing law (83d Ill. Gen. Assem., Senate Proceedings, June 28, 1984, at 24). Clearly, under the amendment to the statute, the caretakers' residences would not qualify for exemption as a "parsonage, convent or monastery," as the caretakers do not fit into the category of "above listed persons who perform religious related activities." Ill. Rev. Stat. 1985, ch. 120, par. 500.2.

■ The Benedictine Sisters argue, however, that the parcel is exempt under the statute as "housing facilities" for their "domestic employees," who maintain the convent and its surrounding grounds and without whom the Sisters could not carry out their religious purpose. Examining the portion of the statute to which the Sisters refer, we conclude that the statute provides an exemption for property used exclusively for religious purposes, including property owned by a religious institution and used as housing facilities provided for ministers performing the duties of their vocation, their spouses, children, and domestic employees. (Ill. Rev. Stat. 1985, ch. 120, par. 500.2.) This means that housing provided for ministers *performing the duties of their vocation* in which their spouses, children, and domestic employees also reside is exempt from taxation. It does not provide an exemption for the separate housing of domestic employees.

Although Illinois courts have not previously applied section 19.2 to a residential parcel used exclusively to house the caretakers of a religious institution, other jurisdictions have dealt with the tax-exempt status of nonecclesiastical employee housing. While the statutes involved are not identical to the statute involved here, they are similar, and the majority of jurisdictions have not found such property to be tax-exempt. (See *Foundation of Human Understanding v. Department of Revenue* (1986), 301 Or. 254, 722 P.2d 1, 2 (caretaker's

residence not exempt under statute providing exemption for "other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes" by religious organizations); *Yehudi v. Assessor of Town of Ramapo* (1985), 109 A.D.2d 744, 486 N.Y.S.2d 63 (residence used by part-time maintenance person ineligible for exemption as the primary use of the property is residential, not religious or educational); *Supervisor of Assessments v. Trustees of Bosley Methodist Church Graveyard* (1982), 293 Md. 208, 214, 443 A.2d 91, 95 (residence of church caretaker not exempt under statute providing exemption for "[p]roperty owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents"); *Congregation B'Nai Jeshurun v. Board of Review* (Iowa 1981), 301 N.W.2d 755, 755-56 (residence of temple custodian not exempt, although use helpful to temple functions, under statute stating that "[a]ll grounds and buildings used *** by *** religious institutions and societies solely for their appropriate objects" shall not be taxed); *Kansas City District Advisory Board v. Board of County Commissioners* (1980), 5 Kan. App. 2d 538, 541, 620 P.2d 344, 347 (caretaker's residence not exempt under statute exempting "[a]ll real property *** actually and regularly used exclusively for *** educational *** [or] religious purposes" as there was no evidence that it was used for church-related activities or in any way other than as a residence). But see *Victory Lutheran Church v. County of Hennepin* (Minn. 1985), 373 N.W.2d 279, 280; *St. John's Lutheran Church v. County of Hennepin* (Minn. 1985), 373 N.W.2d 281, 282 (both cases holding that residences for couples doing custodial work for church "devoted to and reasonably necessary for the accomplishment of church purposes").) Based on a strict construction of our statute and the decisions of the majority of jurisdictions faced with similar facts, the caretakers' residences here are not "used exclusively for religious purposes" and are not exempt from taxation.

The Benedictine Sisters also contend that the parcel should be exempted because the caretakers' residences are necessary to promote the religious purposes of the convent and are, therefore, used "exclusively for religious purposes." They cite *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 142 N.E. 520, and *Monticello Female Seminary v. People* (1883), 106 Ill. 398, as supporting the proposition that caretakers' residences should be exempt from property taxation.

*Monticello* involved the tax-exempt status of certain buildings within a complex containing an institution of learning, one of which

housed the superintendent of grounds. The building was described as occupied by the superintendent and, when necessary, by the scholars of the institution, and was held to be tax exempt. (106 Ill. 398, 401.) Here, of course, the undisputed evidence does not show that the property in question is used by anyone but the caretakers.

*Pearsall* upheld the tax-exempt status of an entire 465-acre tract of property used as a Catholic seminary, including a "gardener's residence." (*People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 13, 142 N.E. 520.) The court did not explain why the gardener's residence was entitled to an exemption. *Pearsall*, however, must be viewed in historical perspective. Also, it should be noted that reliance on such older cases is questionable as those cases were decided under a prior statute which, interestingly, did not provide an exemption for parsonages or convents. *People ex rel. Carson v. Muldoon* (1922), 306 Ill. 234, 137 N.E. 863.

For the foregoing reasons, the judgment of the circuit court of Du Page County reversing the Department's decision denying tax-exempt status to the parcel containing residences for the three caretakers of the Benedictine Sisters is reversed.

Reversed.

LINDBERG, P.J., and UNVERZAGT, J., concur.