(No. 25326.—

THE PEOPLE *ex rel.* Arthur L. Hellyer, County Collector, Appellant, *vs.* STERLING MORTON *et al.* Appellees.

*Opinion filed February 13, 1940.*

RUSSELL W. KEENEY, State's Attorney, (WILLIAM E. HOOPER, JOEL BAKER, and U. S. YOUNG, of counsel,) for appellant.

STEARNS & JONES, (EDWARD H. BAKER, JR., of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The county court of Du Page county sustained objections of the Morton Arboretum, one of appellees, to taxes levied for the year 1936 upon land held by it. The revenue being involved, this court has jurisdiction by direct appeal. The property is claimed to be exempt from taxation. The basis of the claimed exemption was that the real estate is held in trust for charitable purposes and, therefore, exempt under the seventh paragraph of section two of the Revenue act. Ill. Rev. Stat. 1937, chap. 120, sec. 2(7).

The trust was created by Joy Morton and Margaret Gray Morton, husband and wife, in 1922, when they conveyed a part of the real estate involved to certain trustees therein named and their successors in office for the purpose of "creating a foundation to be known as the Morton Arboretum, for practical scientific research work in horticulture and agriculture, particularly in the growth and culture of trees, shrubs, vines and grasses, by means of a great outdoor museum arranged for the convenient study of every species, variety, and hybrid of the woody plants of the world able to support the climate of Illinois, such mu-

seum to be equipped with an herbarium, a reference library, and laboratories for the study of trees and other plants, with reference to their characters, relationships, economic value, geographical distribution and their improvement by selection and hybridization, and for the publication of the results obtained in these laboratories by the officials and students of the arboretum, in order to increase the general knowledge and love of trees and shrubs, and bring about an increase and improvement in their growth and culture." The grantors reserved the right to serve as co-trustees with those named, thus providing for a board of nine trustees. The trust was to continue forever and vacancies occurring on the board were to be filled by a majority vote of the remaining trustees. The power of the trustees to convey or encumber any part of the land was limited and could be exercised only in the furthering of the interest of the arboretum. The grantors reserved the right to add other property to the trust by grant, transfer, devise or bequest, and the trustees were vested with power to accept property from other parties, subject, however, that it was to be devoted to the purposes expressed in the trust deed. Joy Morton reserved the right to change the provisions of the trust, but it does not appear that any change was made during his lifetime. Subsequent to the first conveyance, the grantors, by eight other instruments, conveyed other tracts to the trustees but each deed contained the same provisions as those expressed in the first instrument. The area of all the land conveyed by the several deeds was approximately 700 acres. It forms a tract one-half a mile wide and three miles long.

Appellant concedes these lands are being used by the trustees for the purposes of the trust but contends for a strict construction of the instrument creating the trust and urges that under such construction the property is not exempt from taxes.

The grantors prescribed the purposes of the trust in general terms and left the details of execution to the judgment and discretion of the trustees. Their interpretation of the trust deed, and what they considered as being the intent and purpose of the donors is fully disclosed by the evidence. The premises have been improved by the construction of artificial lakes. They maintain 18 miles of driveway and 15 miles of footpaths through the grounds. Since the foundation began there have been 428,000 plantings of various trees and wooded shrubbery. These plantings were gathered from a wide area, many of them coming from other States and some from foreign countries. The plantings are arranged for convenience of study, each plant family having a different locality, selected with a view as to its special characteristics. Many of the groupings are subdivided. A forest department is maintained and trees having an economical value are arranged in plots varying from one-half an acre to four acres. Trees and shrubs suitable for landscaping are planted and grown. The planting and propagation is done in a scientific way and a record is kept of every planting and, from time to time, the plantings are checked and the growth, development, and other characteristics are recorded in a permanent record. An administration building, plant nursery, library and other buildings, all used in the work of the arboretum, are located on these lands. An herbarium, containing 8500 mounted specimens is kept in the administration building. The library contains many volumes dealing with subjects on horticulture, arboriculture and illustrated landscaping. The library, the herbarium and the premises are open to the public for visitation and study. Lectures based upon the research work that is done are delivered to groups when requested. A bus is furnished to visitors and tours are conducted through the grounds accompanied by a staff representative, who explains the kind and character of the

plantings. Large numbers of visitors from practically all the States in the union and from many foreign countries visit the grounds annually. No charge is made for the lectures or the transportation through the park or the privilege of visiting the places in the park. No seeds, plants or scions are sold, but surplus stock of such is given to nurseries in various parts of the United States and foreign countries. This distribution is in the form of an exchange for other seeds and cuttings which are propagated and developed on these lands. Any one who desires to acquire any of the seeds or plants is furnished with the name or names of the nurseries that are growing them, and purchases may be made from such nurseries. The arboretum receives no commissions from such sales and has no income from the work that it is doing, except that it publishes a bulletin which is distributed to a small list of subscribers at a nominal fee which is less than cost of printing. The trustees receive no compensation. They employ a superintendent and other persons, all of whom receive compensation. Three houses are maintained on the grounds as residences for the superintendent and other employees.

Section 1 of article 9 of the constitution requires that the General Assembly shall provide such revenue as may be needful for governmental purposes by levying a tax by valuation so that every person and group shall pay a tax in proportion to the value of his, her or its property. Section 3 of the article provides that property of the State, county and other municipal groups, both real and personal, and such property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery and charitable purposes may be exempted from taxation by general law. This provision of the constitution is not self-executing and the General Assembly, in the exercise of its constitutional power, provided by the seventh paragraph of section two of the Revenue act (Ill. Rev. Stat. 1937, chap. 120, sec. 2(7)) that all property of institutions

of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other State of the United States and all property of old peoples' homes, when such property is actually and exclusively used for such charitable or beneficent purposes and not leased or otherwise used with a view to profit shall be exempt from taxation.

No fixed rule has been established by which it can be determined whether an organization is charitable and whether its property comes within the test established by statute. In defining what was a charity this court in *Crerar* v. *Williams,* 145 Ill. 625, adopted the following definition: "A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government." This definition has been cited with approval in many subsequent cases. In *Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108, it was said that charity, in the legal sense, is not confined to mere almsgiving or to the relief of poverty and distress but has a wider signification and embraces the improvement and happiness of man. The principle and distinctive features of a charitable organization are that it has no capital, no provision for making dividends or profits but derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in the instrument creating such organization. It does not lose its charitable character, and consequent exemption from taxation, by reason of the fact that the recipients of some of its benefits who are able to pay are required to do so, where no profit is made by the institution and the amounts so received are applied

in furthering its charitable purposes. Another distinguishing feature upon which all exemptions in favor of charitable institutions are based is the benefits the public may receive from the institution and the consequent relief to some extent of the burden upon the State to render similar services to its citizens. A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of society. *Ould* v. *Washington Hospital,* 95 U. S. 303.

In the establishment of this foundation the express intent of the donors was to create a means whereby practical, scientific research work in horticulture and arboriculture could be carried on in an outdoor museum under natural conditions and the results obtained from such research recorded and preserved. It was considered that the scientific facts thus discovered would serve to increase the general knowledge and love of trees and shrubs and bring about an increase and improvement in their growth and culture. It is common knowledge that scientists engaged in the development and propagation of various species of plants, trees and shrubs have developed some that have proven to be of great benefit to man. The trustees in the present case have not limited their efforts to the study of one particular line but have extended it to include fruit trees, trees for forestation and trees and shrubs for landscaping. Such uses are a distinct contribution to the public welfare.

The object of the organization and the uses of its property are such as to create a charitable trust, and the property, having been devoted exclusively to such purposes, is exempt from general taxes.

The judgment is affirmed.          *Judgment affirmed.*