THE HOPEDALE MEDICAL FOUNDATION, Plaintiff-Appellant, *v.* TAZEWELL COUNTY COLLECTOR, Defendant-Appellee.—(ROBERT BURROUGHS, Intervening Petitioner.)

Third District    No. 76-548

Opinion filed May 11, 1978.

David B. Mueller and Richard D. Price, Jr., of Cassidy, Cassidy, Mueller & Price, of Peoria, for appellant.

Bruce Black, State's Attorney, of Pekin (Carl F. Reardon and Mary Patricia Benz, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from various judgment orders entered by the circuit court of Tazewell County. On September 3, 1976, the trial court awarded judgment to the defendant, Tazewell County Collector, on eight consolidated tax objection cases (for the years 1967 through 1974) in which the plaintiff, The Hopedale Medical Foundation, was seeking a declaration that its real estate was used for charitable purposes and therefore exempt from real estate taxation. On September 16, 1976, the trial court granted relief sought by the defendant in its counterclaim by finding that the plaintiff was liable for penalties due to its failure to pay taxes during the years in question. Robert Burroughs intervened in the trial court proceedings by claiming tax deeds to the real estate in question but the intervenor made no court appearances, did not pursue his claim and is not a party to this appeal.

We would be guilty of prolixness if we set forth a detailed recital of the origin and development of The Hopedale Medical Foundation for the same is already clearly and adequately set forth in the case of *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4, hereinafter referred to as 1970 Tax Case. We will recite additional facts as they become pertinent to this appeal.

In the 1970 Tax Case decided in 1970 our supreme court denied the plaintiff foundation exemption from real estate taxation for the reason that it was not used exclusively for charitable purposes. The tax years involved in the 1970 Tax Case were 1961 through 1966. The litigation which is the subject of this appeal was commenced on March 15, 1976, some 5½ years after our supreme court decision in the 1970 Tax Case. The litigation which is the subject of this appeal commences with tax objections for the year 1967 and for the next seven consecutive years and the paramount issue is the same as that which was raised in the 1970 Tax Case, to-wit, whether or not the plaintiff, The Hopedale Medical

*Foundation, is entitled to a real estate exemption because it is used for charitable purposes.*

■■ One may well ask why the trial court permitted this question to be relitigated and it may well be that it should not have been permitted on the theory of estoppel by verdict. (*Turn Verein Lincoln v. Paschen* (1960), 20 Ill. 2d 229, 170 N.E.2d 111.) We are aware, however, that the doctrine of *res judicata* is technically inapplicable in tax cases because each claim of exemption for a particular tax year constitutes a separate cause of action. We therefore quarrel not with the trial court's denial of the defendant's motion which attempted to bar a relitigation of the issue relating to the plaintiff foundation's claim of tax exemption.

The trial court permitted the plaintiff foundation to have its day in court and in this appeal we are naturally confronted with the question as to whether in the years subsequent to 1966 there was a change in the circumstances and operation of the plaintiff foundation. The answer to this question is in the negative. The record in this cause discloses that all of the directors of the foundation admitted that no changes had been effected or authorized in the operation and organization of the plaintiff foundation since the supreme court decision of 1970. It is apparent from the record that the operation and organization of the plaintiff foundation was the same as it had been in the years of 1961 through 1966 which our supreme court found to be such as to defeat a claim for tax exemption.

From 1967 through 1971 Dr. Rossi continued to operate a private medical practice, a private pharmacy, and a consultation business on the property of the foundation.

■■ The law is settled that it is encumbent upon a property owner to show clearly that its organization and use of property falls within the provisions of the statute respecting the exemption of charitable organizations from taxation. *Rotary International v. Paschen* (1958), 14 Ill. 2d 480, 153 N.E.2d 4.

The statutory provisions relating to the exemption of property used for charitable purposes are as follows:

"All property described in Sections 19.1 through 19.24 to the extent therein limited, is exempt from taxation. * * *" Ill. Rev. Stat. 1975, ch. 120, par. 500.

"§19.7.

All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, and all property of old people's homes, when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit; * * *." (Ill. Rev. Stat. 1975, ch. 120, par. 500.7.)

The foregoing statutory provisions implemented the authority for the tax exemption of property used exclusively for charitable purposes which was granted in article IX, section 3 of the 1870 Constitution of the State of Illinois, and which is found in article IX, section 6 of the 1970 Constitution of Illinois.

The all-encompassing issue raised by the plaintiff foundation in this appeal is that it is an institution of public charity as defined by statute (Ill. Rev. Stat. 1975, ch. 120, par. 500.7) and consequently is entitled to a real estate taxation exemption. In buttressing this contention the plaintiff foundation first argues that the record in this cause fails to show a disqualifying benefit which was received by anyone and secondly, that in any event the primary use of the property involved was charitable.

■■ We recognize that our reviewing courts in determining whether tax exemption should be granted to certain institutions have considered the theories of "inurement of benefit" and the "primary and secondary use." We do not deem it necessary to analyze the holdings of these various cases since we believe that the law is still well settled to the effect that when the income of an institution inures to the benefit of a private individual engaged in managing a charity, the institution loses its status as a charitable institution even though that institution might primarily be of a charitable nature. *Sisters of the Third Order of St. Francis v. Board of Review* (1907), 231 Ill. 317, 83 N.E. 272.

The plaintiff foundation asserts that the *St. Francis* case no longer sets forth the applicable law as to the test for charitable institutions seeking tax exemption and advances the argument that there can be no benefit to any individual if that individual exchanges "value for value." It is the plaintiff foundation's theory that any compensation received by Dr. Rossi was commensurate with the actual services rendered by him. This approach in determining whether or not there was any inurement of a benefit to an individual is a novel one and we find no law supporting the proposition that the courts of this state must make a *quid pro quo* analysis in determining the inurement of benefits.

Assuming *arguendo* that a *quid pro quo* analysis should be made we direct our attention to the facts in the instant case. At the outset we are cognizant of the fact that the trial court, as well as counsel for all parties, recognized the dedication and ability of Dr. Rossi and the benefits inuring to the Hopedale community from the medical complex which was created and has been perpetuated largely through the doctor's efforts. Unfortunately dedication and ability do not erase disqualifying benefits received by an individual. Dr. Rossi's life became so imbued in and enmeshed with the activities and affairs of the medical complex that he either could not or would not divorce his private financial activities from

those of the foundation. The 1970 Tax Case clearly set forth guidelines and rang a bell of warning as to what the doctor's role in the foundation should be in future years if a tax exemption was to be forthcoming, yet in the next eight consecutive years he continued to commingle his private affairs with that of the foundation.

Throughout the years in question in the instant case, to-wit, 1967-1974, Dr. Rossi served as medical director and administrator of the foundation. His salary throughout these years ranged from $15,000 to $60,000 per annum. While the foundation had a board of directors it is abundantly clear from the record that day-to-day decisions on both routine and policy matters were left to the decision of the doctor. There was never any vote by the board to authorize the payment of an $11,000 judgment plus attorney fees which had been entered against the doctor, yet the same was paid by the foundation. The doctor continued throughout the years to practice medicine on the facilities of the foundation. His income from this practice was from $30,000 to $40,000 per year. It is significant to note that the foundation opened and maintained what was referred to as satellite offices in the nearby villages of Emden, McLean and Manito. Dr. Rossi as well as other doctors used these medical offices and the rental to be paid for such use was determined by Dr. Rossi. He paid the sum of $100 per month while other doctors paid the sum of $800 per month. For the years of 1969, 1970, and 1974 Dr. Rossi paid no rent but over the course of years treated the second highest number of patients in the satellite offices. Throughout the years in question the doctor received a total of $459,489.72 as direct payments from the foundation. In round numbers this sum includes $99,000 plus interest as payment on a real estate mortgage, $300,000 as salary, $600 for employee examinations, $6,200 for anesthetist services, and $3,500 for providing medical care to individuals who had made donations to the foundation in return for a promise of free lifetime medical care.

Dr. Rossi after the 1970 Tax Case continued to operate his privately owned pharmacy in the Medical Arts Building of the medical complex. While the record discloses that records regarding the pharmacy operation are for the most part nonexistent, it is clear that the operation was commingled with the overall operation of the foundation. After certain computations were made the pharmacy received 95% of the price charged to a patient for drugs and the foundation received 5%. The record establishes that from this privately operated business Dr. Rossi realized a profit.

As the result of his expertise in the creation and operation of nursing homes and other health facilities Dr. Rossi was called upon for advice and consultation by various hospitals and nursing homes. Dr. Rossi became quite involved with requests for assistance from various individuals and

groups who sought his advice regarding the construction and operation of nursing home and medical facilities. As a result of this involvement he organized a consultation business known as Rossi and Associates. The business was operated on the premises of the foundation. The consultation business listed its address as that of the foundation as well as the foundation's telephone number. Dr. Rossi made a reimbursement to the foundation for the cost of long distance phone calls; however, no payment was made to the foundation for the use of secretarial equipment, use of the postage meter or the photostat machine. The only expenses incurred by Rossi and Associates were the expenses incurred in hiring the services of other individuals. The record discloses that the doctor spent from 10 to 15 hours per week working for Rossi and Associates and that from this business he derived a profit.

■■ The record in this cause is voluminous and covers other areas of alleged inurement, to-wit, telephone expenses, cash disbursements to a motel owner by the doctor, courtesy discounts, employment of family members and other miscellaneous matters. We do not deem it necessary to delve further into the question of benefits derived by Dr. Rossi as the result of his association with the foundation. We have not set forth the foregoing activities of Dr. Rossi for the purpose of indicting him for wrongdoing. We are only concerned with whether the plaintiff foundation is entitled to a tax exemption. We do not accept the theory advanced by the plaintiff foundation that we must make a *quid pro quo* analysis in order to determine if value received equals value given. We find no law supporting such a theory, but should this have been the law it is evident that Dr. Rossi would have failed the test. He has failed to divorce his private activities and income from that of the foundation and has realized a profit or benefit at the expense of the foundation and consequently the trial court was correct in denying the plaintiff foundation tax exemption from the assessment and payment of real estate taxes. *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4; *Sisters of the Third Order of St. Francis v. Board of Review* (1907), 231 Ill. 317, 83 N.E. 272.

■■ The plaintiff foundation further contends that the denial of a tax exemption to its property is violation of the equal protection clause of both the Illinois and Federal constitutions. In support of this contention it is submitted by the plaintiff that in other communities physicians from the medical staff serve on the board of directors of a hospital, *i.e.*, the cities of Carbondale, Elgin, Rockford, and Proctor Hospital at Peoria, and that in other instances compensated administrative officers sit as voting members of the governing bodies of hospitals. The plaintiff infers that a Draconian rule of law has been applied to its operation. We do not profess to be too knowledgeable of the legal code of 621 B.C. promulgated by the

Athenian Draco; however, we are not impressed by the denial of equal protection argument presented by the plaintiff foundation. We accept the fact that in many instances physicians on a hospital's medical staff serve as well on its board of directors, as does a layman hospital administrator. We do not, however, equate these situations with a situation where a doctor operates a privately owned pharmacy, a consultation business on the property of a medical complex, and who further rents space on a preferential basis, uses the hospital facilities for his private practice and is for all practical purposes the sole decision maker on financial, policy and routine matters. We find no denial of the constitutional equal protection clauses as claimed by the plaintiff foundation.

The plaintiff foundation next claims that it was entitled to a separate consideration of the distinct uses made of various portions of its property.

We are aware of the cases where our courts have recognized that a single tract of land may be divided into several uses, some of which are exempt and some of which are not. *First Methodist Episcopal Church v. City of Chicago* (1861), 26 Ill. 482; *Glen Oak Cemetery Co. v. Board of Appeals* (1934), 358 Ill. 48, 192 N.E. 673; *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371.

In the 1970 Tax Case counsel for both parties agreed that the facilities of The Hopedale Medical Foundation, including the Hopedale House, the nursing home and the nurses' residence, were interrelated parts of a single medical complex. In that case our supreme court stated in effect that it had not discovered any basis upon which to sever the facilities of the complex into taxable and tax-exempt components. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4.) As we have previously stated, the record is replete with testimony to the effect that after the 1970 Tax Case there were no changes in the circumstances and operations of the foundation, ergo it follows that if there was no basis for a division on the property prior to the 1970 Tax Case then nothing has transpired since then to provide such a basis.

■■ As we have previously determined, the plaintiff foundation failed to carry the burden of proving that it was a charitable institution entitled to tax exemption due to the inurement of benefits received by Dr. Rossi from the foundation in its entirety. The component parts of the foundation are all interrelated and hence we find no basis for a division of its property for purposes of taxation.

Lastly, the plaintiff foundation claims that the trial court improperly imposed penalties upon the unpaid real estate taxes for the years 1969 through 1974.

It is the plaintiff foundation's contention that the applicable statutory provision is section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 675). With this contention we disagree. Section 194 of our

Revenue Act pertains to the payment of taxes under protest and does not relate to the matter of penalties.

The applicable statute as to penalties is section 224 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 705), which provides in part as follows:

> "* * * all real estate upon which the first installment of taxes for years subsequent to the year 1950 remains unpaid on the first day of June annually shall be deemed delinquent as to such first installment * * * and such unpaid first installment shall bear interest after the first day of June annually at the rate of 1% per month until paid or forfeited; and all real estate upon which the second installment of taxes remains due and unpaid on the first day of September, annually, shall be deemed delinquent as to such second installment, and such unpaid taxes as to such second installment shall bear interest after the first day of September, at the rate of one per cent per month until paid or forfeited." Ill. Rev. Stat. 1975, ch. 120, par. 705.

■■ The above-quoted statutory provision clearly relates to the imposition of penalties for delinquent payment of taxes. The plaintiff foundation elected not to pay under protest even a portion of the taxes assessed against its property, but instead filed objections each year and sought relief by a suit for declaratory judgment. Upon failing to prevail in the declaratory judgment action the trial court was correct in imposing penalties as provided for in section 224 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 705).

A case notably similar to the instant case is *People ex rel. Stuckart v. N. J. Sandberg Co.* (1917), 282 Ill. 245, 118 N.E. 469. In the case of *Sandberg* our supreme court in a case relating to penalties assessed after objections to a tax had been filed and the matter litigated found that the statute fixes the penalty and the court has no power to waive it. The plaintiff foundation cites as authority for the proposition that no penalties should have been assessed the case of *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 167 N.E.2d 236. In the *Lakefront* case it was held that a successful taxpayer was not entitled to interest on moneys refunded because no provision was made for such an award under section 194 (Ill. Rev. Stat. 1959, ch. 120, par. 675). It is the reasoning of the plaintiff foundation that the converse should be true in that a court would be without authority to enter a judgment awarding interest or penalties to a county on an objected tax payment. In our opinion the plaintiff's reasoning is in error in that it presupposes that the penalties assessed in the instant case were done so by virtue of statutory authority found in section 194 of our Revenue Act. As we have stated, such was not the case since the provisions of section 224 were utilized which expressly provides for penalties.

■■ The defendant has cross-appealed in this cause and claims that the trial court erred in denying its motion for the taxation of reasonable expenses and attorney fees. To agree with the defendant we must find that the plaintiff foundation failed to act in good faith in regard to instituting the litigation which is the subject of this appeal. (Ill. Rev. Stat. 1975, ch. 110, par. 41.) We will not so hold, since as we have previously observed the doctrine of *res judicata* is inapplicable in tax cases. The plaintiff foundation sought tax exemption on different theories than those posed in the 1970 Tax Case. That we do not agree with the theories does not therefore impute bad faith on the plaintiff foundation and therefore we will not reverse the judgment of the trial court as to the allowance of expenses and attorney fees to the defendant.

For the reasons stated the judgments and orders of the trial court which denied the relief sought by the plaintiff foundation and which assessed penalties on the unpaid taxes of the foundation is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.