LUTHERAN CHILD AND FAMILY SERVICES OF ILLINOIS, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 2—87—0087

Opinion filed September 11, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Michael J. Wynne and Bret A. Rappaport, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Gary M. Moore and Mitchell J. Overgaard, both of Overgaard & Davis, of Chicago, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The defendant, the Illinois Department of Revenue (Department), appeals from the judgment of the circuit court which reversed the Department's denial of a property tax exemption for two buildings on a parcel of real estate owned by the plaintiff, the Lutheran Child and Family Services of Illinois (LCFS), a not-for-profit corporation organized to provide social services. The sole issue on appeal is whether the trial court erred when it determined that the buildings in question, the residence of the superintendent of grounds and an apartment building for six staff members, met the requirements for exempt status set forth in sections 19.2 and 19.7 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1985, ch. 120, pars. 500.2, 500.7).

On April 17, 1983, the board of review of Du Page County denied exemptions for the two buildings in question. The Department agreed with the denial, and LCFS requested an administrative hearing. The following are the undisputed facts.

Lutherbrook Children's Center (Lutherbrook), located in Addison, Illinois, is a residential care and treatment facility licensed to serve 36 children. These children have all been diagnosed as having either emotional and/or behavioral problems. The parcel at issue concerns the tax-exempt status of two buildings on a four-building lot.

Building No. 1 is a residential structure occupied by the maintenance man. At the time of the hearing, this building had been used exclusively as a residence for the maintenance man, whose duties include physical plant repair and grounds upkeep from 7 a.m. to 3 p.m. daily, although he is also available for emergencies. The director of Lutherbrook testified that the maintenance man is requested to do off-hours repairs several times a week and no one else at Lutherbrook could make these off-hours repairs. The maintenance man lives at the residence rent-free, and this arrangement is considered part of his salary.

Building No. 2, known as Chapman House, consists of six one-room apartments for staff employees and a storage facility for Lutherbrook's van, tractor and bicycles. These small units contain a kitchen and washroom facility. Previously, the Department determined that the garage portion, which constitutes 10% of the building, was exempt. That decision is not on review in the present case.

At the time of the hearing, five of the six units housed single staff members, while the remaining unit housed a family with one child. The staff members can choose voluntarily to live at Chapman House, and Lutherbrook then adjusts their salary to account for their residence at a rent-free apartment. Chapman House is not used as a facility to counsel or tutor the children.

Fifty-nine persons are employed at Lutherbrook. The other fifty-three employees, although residing off the premises, do live in close proximity.

On the hearing date, Chapman House housed one child-care supervisor, one teacher, and four child-care workers. The supervisor works a 40-hour week; however, she is available for the once- or twice-weekly emergencies which normally occur. Lutherbrook has always had a supervisor residing on the premises. The teacher does no tutoring at Chapman and no teaching other than during regular hours. The remaining residents and child-care workers work eight-hour shifts and are seldom asked to work off-hours for any reason.

Lutherbrook is fully staffed 24 hours a day, divided into three shifts, and, thus, the residents at Chapman House are not normally needed outside their normal shifts. On occasion, however, those employees were called if regularly scheduled staff were unavailable.

On January 5, 1987, on administrative review, the circuit court reversed the Department's denial and granted the property tax exemption with regard to both Chapman House and the maintenance man's residence. In finding that these two buildings were "reasonably and directly necessary to the charitable purpose of Lutherbrook," the court noted that it placed weight on the particular nature of Lutherbrook, namely, as a facility for emotionally and behaviorally disturbed children.

On appeal, the defendant argues that the circuit court erred when it reversed the Department's denial of a property tax exemption for the maintenance man's residence and for Chapman House. Specifically, the defendant contends that the facts presented do not establish that the statutory-use requirement found in sections 19.2 and 19.7 of the Act (Ill. Rev. Stat. 1985, ch. 120, pars. 500.2, 500.7) was satisfied.

■ Because the relevant facts are undisputed, the issue of whether the property here is exempt is a question of law. (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240; see also *Caterpillar Tractor Co. v. Department of Revenue* (1963), 29 Ill. 2d 564, 566, 194 N.E.2d 257.) Thus, the decision as to whether the property is exempt "depends solely upon an application of the appropriate legal standard to the undisputed facts" (*Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315), and this court's role is to determine whether the trial court properly found that the property in question was entitled to tax-exempt status. See *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 311, 490 N.E.2d 161.

■ It is a well-settled rule of law in Illinois that all property is subject to taxation unless specifically exempted by statute. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90, 134 N.E.2d 292; *Metropolitan Sanitary District v. Rosewell* (1985), 133 Ill. App. 3d 153, 155, 478 N.E.2d 1100.) The Illinois Constitution provides that exemptions may be made only for property "used exclusively" for certain purposes, stating:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies and for school, religious, cemetery

and charitable purposes." (Ill. Const. 1970, art. IX, sec. 6.)
Section 19 of the Act states that "[a]ll property described in Sections
19.1 through 19.23—1 to the extent therein limited, is exempt from
taxation." (Ill. Rev. Stat. 1985, ch. 120, par. 500.) The applicable sec-
tions at the time the tax exemption was denied were sections 19.2
and 19.7 of the Act. Section 19.2 described property exempt, because
of its use for religious purposes, as follows:

"All property used exclusively for religious purposes, or used
exclusively for school and religious purposes, or for orphanages
and not leased or otherwise used with a view to profit, includ-
ing all such property owned by churches or religious institu-
tions or denominations and used in conjunction therewith as
parsonages, or other housing facilities provided for ministers
(including bishops, district superintendents and similar church
officials whose ministerial duties are not limited to a single con-
gregation), their spouses, children and domestic workers, per-
forming the duties of their vocation as ministers at such
churches or religious institutions or for such religious denomi-
nations, and including the convents and monasteries where per-
sons engaged in religious activities reside." Ill. Rev. Stat. 1985,
ch. 120, par. 500.2.

Section 19.7 of the Act described property exempt because of its
use for charitable purposes as follows:

"All property of institutions of public charity, all property of
the beneficent and charitable organizations, whether incorpo-
rated in this or any other state of the United States, [and] all
property of old people's homes *** when such property is actu-
ally and exclusively used for such charitable or beneficent pur-
poses, and not leased or otherwise used with a view to profit;
and all free public libraries." Ill. Rev. Stat. 1985, ch. 120, par.
500.7.

■ Statutes granting tax exemptions must be construed strictly
in favor of taxation (*Board of Certified Safety Professionals of Ameri-
cas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *Peo-
ple ex rel. Kassabaum v. Hopkins* (1985), 106 Ill. 2d 473, 476, 478
N.E.2d 1332), and the party claiming an exemption has the burden of
proving clearly and conclusively that the property in question falls
within the terms of the statute under which the exemption is claimed.
(*Board of Certified Safety Professionals of Americas, Inc. v. Johnson*
(1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485; *Coyne Electrical School
v. Paschen* (1957), 12 Ill. 2d 387, 390, 146 N.E.2d 73.) Every presump-
tion is against the intention of the State to exempt property from tax-

ation (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 456, 419 N.E.2d 899; *Antioch Missionary Baptist Church v. Rosewell* (1983), 119 Ill. App. 3d 981, 982, 457 N.E.2d 500), and doubts concerning the applicability of the exemptions are to be resolved in favor of taxation. *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455, 419 N.E.2d 899; *In re Mi-Jack Products, Inc.* (1985), 136 Ill. App. 3d 721, 726, 483 N.E.2d 920.

■■ ■ Both sections have in common that they allow exemptions only for property which is used exclusively for the stated purpose. (Ill. Rev. Stat. 1985, ch. 120, pars. 500.2, 500.7.) Property satisfies the exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose, even though it is also used for a secondary or incidental purpose. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 98, 456 N.E.2d 73; *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 441, 465 N.E. 2d 986.) Furthermore, based on the standards set out in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 278, 230 N.E.2d 846, "[e]xemption[s] will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution." (38 Ill. 2d 272, 278, 230 N.E.2d 846.) Our courts have interpreted the "reasonably necessary" language used in *MacMurray College* and have held that residential property satisfies the primary purpose test only if one of two conditions is met: Either (1) the resident-employee performs an exempt function, such as educational or religious duties, and is required by those exempt duties to live in the residence; or (2) the resident-employee performs his duties in furtherance of the institution's exempt purpose in the building. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 99, 456 N.E.2d 73; *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 329, 508 N.E.2d 470.) It is our belief that applying the standard to the buildings in the present case, neither is entitled to tax-exempt status.

■■ The record demonstrates that building No. 1 is used exclusively as a residence for the maintenance man for the LCFS facility. The testimony of LCFS' witnesses is that the maintenance man performs no educational duties and that building No. 3 is never used for any purpose other than as the maintenance man's residence. The tax-exempt status of such a residence has been determined by this court in *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 508 N.E.2d 470. In that case, the taxpayer argued regarding the tax-exempt status of three residences

used to house the maintenance man, auto mechanic and grounds keeper for a 47-acre convent complex. The taxpayer contended that it was reasonably necessary for the proper functioning of the institution that these domestic employees live on the premises. In *Benedictine Sisters*, we applied the two-part test outlined above and held that the caretakers' residences did not meet either test, as the caretakers were not performing any religious duties and no religious activities were carried on in the residences. (155 Ill. App. 3d 325, 329, 508 N.E.2d 470.) In the absence of evidence that the residence of the maintenance man, a domestic employee, satisfies either standard, it is clear in the instant case that building No. 1 is not entitled to tax-exempt status.

■ With regard to Chapman House, the record demonstrates that none of the residents who live in the apartments are "required" to do so by any formal rule. Furthermore, it is undisputed that this building serves exclusively as a residence and that no educational activities are performed there. Thus, according to the two-part test outlined in *Benedictine Sisters*, this building does not satisfy the standard for tax-exempt status. LCFS argues, however, that the building is exempt, as "individuals who live [in Chapman House] have historically responded to emergencies," and that the low rents offered have been sufficient to forego the imposition of a formal requirement that the staff reside on the premises. It is our opinion, however, that the taxpayer misapplies the "required by their duties" prong of the two-part test. In this regard, the record demonstrates that Lutherbrook is staffed 24 hours a day, every day of the year. Furthermore, LCFS witnesses testified that the staff members who do reside in Chapman House were not usually needed other than during their normal shifts. Specifically, when asked "how often during a given month are either one or all four of [the residents of Chapman House] called to [the students dorm] to quell a disturbance," the taxpayer's witness answered "rarely." Similarly, in *Benedictine Sisters*, the caretakers were on-call all day and all night, as the taxpayer's witness testified that the nuns who resided in the convent were helpless in case of a mechanical emergency. In that case, the taxpayer argued that the on-the-premises residence of the caretakers was necessary to help the nuns carry out their religious purposes. In *Benedictine Sisters*, we rejected the taxpayer's attempt to equate convenience with necessity. Similarly, in the present case, the evidence presented does not demonstrate that, although convenient, it was necessary to have staff employees on the premises on a regular basis. In the absence of such evidence, Chapman House does not satisfy the "required by their duties" prong of

the two-part test.

For the foregoing reasons, the judgment of the circuit court of Du Page County, reversing the Department's decision to deny tax-exempt status to the buildings in question, is reversed.

Reversed.

HOPF and INGLIS, JJ., concur.