CANTIGNY TRUST, Plaintiff-Appellee, v. THE DEPARTMENT OF REVE-
NUE, Defendant-Appellant.

Second District   No. 2—87—0963

Opinion filed June 30, 1988.

INGLIS, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellant.

Edward G. Proctor and Thomas F. Ging, both of Isham, Lincoln & Beale, of Chicago, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, the Department of Revenue (Department), appeals the judgment of the circuit court of Du Page County granting tax-exempt status to five parcels of land owned by the plaintiff, Cantigny Trust. The residences house the director of security and groundskeepers of the park operated by the trust. On appeal, the Department asserts that the residences are not reasonably necessary to the operation of the park.

Plaintiff operates Cantigny Park and Gardens, located on the estate of Colonel Robert R. McCormick in Du Page County. The park contains two museums, gardens, nature areas with trails, campgrounds and wildlife preserves, and the gardens are open to the public year-round. Boy Scouts often camp on the grounds. The Department does not dispute the general charitable nature of Cantigny Trust. The instant appeal relates only to the five parcels occupied by the residences.

On July 1, 1986, the Department issued its final administrative decision for the tax year 1984, granting tax-exempt status to the entire park except for 200 acres used for farming and the five residences. The Department reached the same result for tax year 1985. Plaintiff filed complaints for administrative review of both decisions in the circuit court of Du Page County, which consolidated the actions. The court affirmed the portion of the Department's decision denying tax-exempt status for the farmed parcels, but reversed the portion of the Department's decision denying exemptions for the residences. The Department appeals the court's order granting exemptions for the five residences. Plaintiff does not appeal the portion of the judgment relating to the farmed parcels, and that issue is not before us.

The following facts regarding the residences were adduced at the administrative hearing. The first of the houses at issue is occupied by J. Knox, the park's director of security, and his wife and child. He keeps a radio in the house, which is activated if an alarm in one of the museums is tripped. He keeps the radio on at all times that scouts are camping in the park.

The second house in question is occupied by Narcisco Felix, the

park's head groundskeeper. The house is located near a greenhouse where plants are stored for the winter. Felix watches the greenhouse in winter and is responsible for clearing snow from the roads and paths in the park. He supervises the heating of the greenhouse 24 hours a day during the winter. On past occasions he has been required to activate manually the emergency heating system.

The third house at issue is the residence of the head maintenance man for the museums and other buildings, Mr. Smith. In addition to maintaining the buildings, Smith's duties include opening the museums in the morning, fixing the public restrooms if necessary, assisting Felix with the greenhouse and serving as a backup for Knox. The remaining two residences house assistant groundskeepers.

All five employees are required to live on the grounds as a condition of their employment and are on 24-hour call in case of an emergency, such as a fire or break-in. However, none of the employees performs any of his duties in the houses; they are used strictly as residences. All of the employees have at some time responded to fire or burglar alarms. Plaintiff's brief states, "If Cantigny did not have employees residing on the grounds, it would incur substantial additional expense in hiring more employees."

■■ Both parties correctly recognize that the facts are undisputed. Therefore, the issue of whether the property is exempt is a question of law, the resolution of which depends solely upon the application of the appropriate legal standards to those facts, and this court must decide whether the trial court properly found that the property was exempt from taxation. *Evangelical Alliance Mission v. Department of Revenue* (1987), 164 Ill. App. 3d 431, 439, 517 N.E.2d 1178; *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 328, 508 N.E.2d 470.

■■ All property is subject to taxation unless a statute specifically exempts it. The constitutional provision authorizing the legislature to exempt certain specified property from taxation states, in relevant part:

> "The General Assembly by law may exempt from taxation *** property used exclusively for *** charitable purposes." (Ill. Const. 1970, art. IX, §6.)

Section 19 of the Revenue Act of 1939 implements this constitutional provision by providing that all property described in sections 19.1 through 19.24 of the Act is exempt from taxation. (Ill. Rev. Stat. 1985, ch. 120, par. 500.) Section 19.7 of the Act exempts from taxation:

> "All property of institutions of public charity, all property of

beneficent and charitable organizations, whether incorporated in this or any other state of the United States *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit ***." (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) Certain well-established principles govern the construction of the statute. Statutes granting tax-exemptions are construed strictly in favor of taxation; the party claiming the exemption has the burden of proving clearly and conclusively that the property in question falls within the terms of the exemption statute. (*Evangelical Alliance*, 164 Ill. App. 3d at 440; *Wheaton College v. Department of Revenue* (1987), 155 Ill. App. 3d 945, 947, 508 N.E.2d 1136.) Every presumption is against the State's intent to exempt property from taxation, and doubts concerning the applicability of an exemption are resolved in favor of taxation. *Rotary International v. Paschen* (1958), 14 Ill. 2d 480, 487, 153 N.E.2d 4; *Benedictine Sisters*, 155 Ill. App. 3d at 328.

■ Section 19.7 allows exemptions only for property used exclusively for charitable purposes. (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) Property satisfies this exclusive-use requirement if it is primarily used for the exempted purpose, even though it may also be used for a secondary or incidental purpose. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 98, 456 N.E.2d 73; *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537.) In the analogous case of property used as a residence for school personnel, the supreme court stated:

"Exemption will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution." *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 278, 230 N.E.2d 846.

■ This court has interpreted the "reasonably necessary" test of *MacMurray* to require that residential property is exempt from taxation "only if one of two conditions is met: Either (1) the resident-employee performs an exempt function, such as educational or religious duties ***; or (2) the resident-employee performs his duties in furtherance of the institution's exempt purpose in the building." *Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 425, 513 N.E.2d 587.

In *Lutheran Child*, this court found that the residence of a maintenance man on the grounds of a private school was not exempt from taxation since the maintenance man performed no educational duties

and the building was never used for any educational purpose. (*Lutheran Child*, 160 Ill. App. 3d at 426.) Similarly, a second building used as a staff residence also did not qualify for exemption because the employees were not required by the nature of their duties to live on the premises and no educational functions took place in the building. *Lutheran Child*, 160 Ill. App. 3d at 426.

In another recent case, this court held that the residences of the mechanic, chief engineer and groundskeeper of a convent were not exempt. The employees were clearly not ministers "performing the duties of their vocation" (Ill. Rev. Stat. 1985, ch. 120, par. 500.2), so that the residences were not used exclusively for religious purposes. *Benedictine Sisters*, 155 Ill. App. 3d at 330-31; see also *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 116-17, 145 N.E.2d 80; Annot., 15 A.L.R.2d 1064, 1073-74 (1951).

By contrast, in *Evangelical Alliance Mission v. Department of Revenue* (1988), 164 Ill. App. 3d 431, 517 N.E.2d 1178, we upheld the exemption for an apartment building occupied by furloughed missionaries. The ministry which sponsored the missionaries required them to return for "debriefing" every three years, and the apartment building was located next to the ministry's headquarters. Thus, the missionaries were clearly ministers performing the duties of their vocation, and their duties required them to live in close proximity to the ministry headquarters. *Evangelical Alliance*, 164 Ill. App. 3d at 443; see also *Illinois Conference of the United Church of Christ v. Department of Revenue* (1988), 165 Ill. App. 3d 200, 518 N.E.2d 755.

Generally, the same analysis is used to determine charitable exemptions as religious exemptions. (*Fairview Haven v. Department of Revenue* (1987), 153 Ill. App. 3d 763, 774, 506 N.E.2d 341.) Plaintiff relies on *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 465 N.E.2d 986, wherein the court stated that the test applied in *MacMurray College* "was whether the property was primarily used for 'purposes which are *reasonably necessary* for the accomplishment and fulfillment of the educational objectives, *or efficient administration* of the particular institution.' (Emphasis added.)" (*Evangelical Hospital*, 125 Ill. App. 3d at 443, quoting *MacMurray College*, 38 Ill. 2d at 278; see also *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 313, 490 N.E.2d 161.) Plaintiff contends that its sole charitable function, according to the will of Robert McCormick, is to maintain the museums and park grounds, and that the employees in question, the security director, maintenance man and groundskeepers, are reasonably necessary for that purpose. Plaintiff argues that, unlike *Lutheran Child* and *Bene-*

*dictine Sisters,* where maintenance functions were merely incidental to the institutions' educational and religious purposes, plaintiff's employees perform the essence of its charitable work: maintaining the grounds. This argument misses the mark.

Although it is true that one of plaintiff's charitable functions is to maintain the grounds of Cantigny Park and that maintenance men and groundskeepers are necessary for this purpose, plaintiff has failed to demonstrate that these employees are required to live on the grounds as well as work there, or that they performed any of their duties at their residences. While it is undisputed that the employees are required to live on the grounds as a condition of their employment, this fact alone is not significant. In *Benedictine Sisters* the employees in question were required as a condition of their employment to reside on the grounds, yet this court held the parcels not exempt. (*Benedictine Sisters,* 155 Ill. App. 3d at 326-27.) Like the maintenance men in *Lutheran Child* and *Benedictine Sisters,* it is clear that the employees are required to live on the grounds solely for the employer's convenience. Although all five employees are theoretically on call 24 hours a day, they rarely perform any duties except during normal working hours. It appears that their extra-hours duties could be handled by hiring additional employees, by requiring the present employees to live in close proximity to the park, or by installing additional security equipment. Although this might entail some additional expense for plaintiff, the issue is whether the employees' duties are reasonably necessary to the performance of its charitable functions, not what is convenient for the institution.

It is undisputed that the employees do not perform any of their duties at the residences. This case is thus distinguishable from *Evangelical Hospital,* on which plaintiff relies. In *Evangelical Hospital,* the court held that the hospital administration building was reasonably necessary to the institution's functions. Obviously, the administrative functions actually took place on the exempted property.

Plaintiff also relies on a number of older cases in which groundskeeper's residences were held to be exempt from taxation. (*People ex rel. Hellyer v. Morton* (1940), 373 Ill. 72, 25 N.E.2d 504; *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 142 N.E. 520; *Monticello Female Seminary v. People* (1883), 106 Ill. 398.) *Hellyer* and *Pearsall,* however, merely held that the entire grounds of the institutions were exempt. Although those grounds contained caretakers' residences, the courts never dealt with the specific issue of whether those residences were exempt. In *Monticello,* the court noted that the superintendent's residence was occasionally occupied "by the

scholars of the institution." (*Monticello*, 106 Ill. at 400.) Furthermore, as we noted in *Benedictine Sisters*, these older cases must be viewed "in their historical perspective." At the times in question, the institutions were located in rural areas, and the lack of modern transportation and communications technology made it more important for employees to reside on the premises. See *Benedictine Sisters*, 155 Ill. App. 3d at 331-32.

■ In summary, plaintiff has failed to demonstrate that employee residences are necessary to the performance of its charitable functions. The employees do not perform any of their duties at the residences, and the nature of their duties does not require them to live on the premises. Therefore, the portion of the circuit court's judgment granting a tax-exemption for those residences is reversed. Since plaintiff does not appeal the portion of the court's judgment denying an exemption for the farmed parcels, that part of the court's judgment is affirmed.

Affirmed in part; reversed in part.

REINHARD, J., concurs.

JUSTICE INGLIS, dissenting:

I respectfully dissent. The majority refers to "historical perspective" and comments on lack of modern need to have employees reside on religious or charitable grounds. The foundation for the majority decision is *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325. I question whether government should make the determination of whether the Benedictine sisters, who are constitutionally practicing their religious beliefs, should lose tax-exempt status of a portion of their property because they required employees to reside on the grounds. *Benedictine Sisters* may be leading us in the wrong direction.

Turning to Cantigny Park and Gardens, we all know there is very little respect for property among certain members of our society. Security is important. Museums and nature areas of natural beauty can be damaged or forever destroyed in minutes. The presence of employees coming and going at all hours is a significant deterrent to vandalism and theft. The majority should not require the expense of hiring 24-hour security because it believes the service being performed by resident employees is not reasonably necessary.

The majority draws a distinction between what is reasonably necessary and what is convenient for the institution. Are we drawing too

fine a line? Black's Law Dictionary defines "necessary":

> "This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought." (Black's Law Dictionary 928 (5th ed. 1979).)

Is the use reasonably necessary? Anyone acquainted with the operation of our State and national parks will find numerous resident park attendants and rangers. I submit they are all deemed to be necessary, convenient and in the best interest of proper operation of the facilities. The use proposed here is not unusual or overreaching, and the appropriate authority is only doing what similar government-operated facilities do every day.

Prompt and efficient maintenance of security, heating, lighting, air conditioning, driveway clearance, *et cetera*, are not incidental to the institutions. Without them, the institutions could not function as they are expected to function in today's world. The real historical perspective is that we are more dependent on the ancillary services of life than we have ever been, and even momentary loss of service can cause great damage and expense.

If religious institutions and charities are to lose their tax-exemption, let the legislature do it, but let us not erode their lawful exemptions in the courts by determining that maintenance of security and modern services on site is not reasonably necessary.

For the above reasons, I would affirm the trial court's decision.