GIRL SCOUTS OF DU PAGE COUNTY COUNCIL, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee (Du Page County Board of Review, Defendant).

Second District   No. 2—89—0170

Opinion filed October 12, 1989.

Frank E. Jeffers III, of Wheaton, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Michael J. Goldrick and Jan E. Hughes, Assistant Attorneys General, of Chicago, of counsel), for appellee.

JUSTICE NASH delivered the opinion of the court:

In this action brought by plaintiff, Girl Scouts of Du Page County Council, Inc., to set aside the decision of the Department of Revenue (the Department), the trial court affirmed the Department's denial of an exemption for property taxes pursuant to the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 500.7) for a parcel of plaintiff's property. On appeal, plaintiff contends that the court erred in affirming the Department's decision denying an exemption from real estate property taxes to the site manager's residence and surrounding property on the grounds the property was not used exclusively for charitable purposes. We affirm.

Plaintiff, Girl Scouts of Du Page County Council, is an Illinois not-for-profit corporation chartered by the Girl Scouts of America. The Girl Scouts own approximately 120 acres in Du Page County known as Camp Greene Wood consisting of 11 contiguous parcels of property upon which they maintain their Council Service Center, three cabins, a picnic pavilion, tent sites, storage buildings, a pond, nature trails, the site manager's facility, and other sites and buildings for the use of scouts and leaders.

The Girl Scouts have hired a site manager and require him to live

on the premises to maintain its property and keep it secure. The site manager's facility is located on the main road into Camp Greene Wood, and all persons, troops, or groups are required to check in and out upon entering or leaving. This facility was constructed by the Girl Scouts in 1980 through donations and volunteer labor and is a two-story building; it has an upper floor containing three bedrooms, 1½ baths, a kitchen, dining room, and living room. The site manager uses the dining room area as his office, in which he keeps his desk and records, key box, and radio base station. The radio is left on at all times when users are in camp. The basement contains a garage, and one half of the basement is used to store such items as the Girl Scout truck, tractor, cross-country skis, and minor camping equipment.

The Girl Scouts pay for the telephone and for maintenance of the facility, and the site manager pays for electricity and heat. The Girl Scouts have made living in the facility a condition of the site manager's employment, and he pays no rent. In 1986, the tax year for which the Department denied tax exemption to a portion of the site manager's facility, the site manager lived there with his mother.

The job duties of the site manager include patrolling the camp sites, repairing equipment, dispensing equipment and keys, maintaining lawn care, removing snow, checking the camp's perimeter fence, and checking in groups using the camp. Three of the camp buildings have a security system which directly transmits an alarm to an outside security company. The site manager is also responsible for engaging and disengaging these systems when necessary. He is on call 24 hours a day on the five days a week that he works and is the person all campers are instructed to contact in case of an emergency. On the site manager's days off, a neighbor who lives across the street from the camp performs the job duties. The site manager does not direct camp programming or activities and is not involved in the camp leadership.

In 1987, the Department of Revenue issued a tax exemption certificate for Camp Greene Wood for 1986 and subsequent years, but denied an exemption from property taxes for the parcel of property which included the site manager's facility because it was not used exclusively for charitable purposes. The Girl Scouts petitioned for administrative review, after which the Department modified its total denial of exemption and exempted from real estate taxes for 1986 all portions of Camp Greene Wood except the ground on which the site manager's residence is located, one-half of the lower level of the residence, and all of the upper level of the residence, except the office area. In April 1988, the Girl Scouts sought relief under the Adminis-

trative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*) in the circuit court which resulted in a judgment affirming denial of the exemption, from which they appeal.

■ As the relevant facts are undisputed, whether the property is exempt is a question of law (*Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 583, 510 N.E.2d 564) and whether it is entitled to exemption depends solely upon an application of the appropriate legal standard to the undisputed facts. *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315.

■ ■ All property is subject to taxation unless specifically exempted by statute. (*Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 327, 508 N.E.2d 470.) The Illinois Constitution provides in relevant part:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, §6.)

The Illinois Revenue Act of 1939 exempts certain property from taxation, including:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States *** and all property of not-for-profit organizations providing services or facilities related to the goals of educational, social and physical development *** when such property is actually and exclusively used for such charitable or beneficent purposes ***." Ill. Rev. Stat. 1987, ch. 120, par. 500.7.

This exemption is allowed only for property used exclusively for the stated purpose. (Ill. Rev. Stat. 1987, ch. 120, pars. 500.2, 500.7.) Statutes granting tax-exemptions are construed strictly in favor of taxation, and the party claiming the exemption has the burden of proving by clear and convincing evidence that the property in question falls within the terms of the exemption statute. (*Cantigny Trust v. Department of Revenue* (1988), 171 Ill. App. 3d 1082, 1085, 526 N.E.2d 518.) The exclusive use requirement of the exemption statute is satisfied where the property is used primarily for the exempted purpose, although it may also be used for a secondary or incidental purpose. (*McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 98, 456 N.E.2d 73.) Residential property satisfies the primary purpose test only if either (1) the resident-employee performs an exempt function and is re-

quired by those exempt duties to live in the residence, or (2) the resident-employee performs his duties in furtherance of the institution's exempt purpose in the building. *Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 425, 513 N.E.2d 587.

■ In determining whether the primary purpose of property makes it tax exempt, the courts have recognized two distinct situations: (1) where the property as a whole, or in unidentifiable portions, is used both for an exempt purpose and a nonexempt purpose, the property will be wholly exempt only if the exempt use is primary and the nonexempt use is incidental; and (2) where distinct portions of the property are used for exempt purposes and the remainder is used for nonexempt purposes, the remainder alone is taxable if it is a substantial portion of the property. (*Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 66, 273 N.E.2d 371; *Metropolitan Sanitary District v. Rosewell* (1985), 133 Ill. App. 3d 153, 156, 478 N.E.2d 1100; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 278, 507 N.E.2d 1331.) Other cases have also recognized that where property is used for two purposes, the exempt portion may be taxed while the remainder may be tax-exempt. *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 117, 145 N.E.2d 80; *Hopedale Medical Foundation v. Tazewell County Collector* (1978), 59 Ill. App. 3d 816, 823, 375 N.E.2d 1376, 1382; *Fox Valley Airport Authority v. Department of Revenue* (1987), 164 Ill. App. 3d 415, 419, 517 N.E.2d 1200.

In rendering its decision denying tax exemption to a portion of the parcel which it deemed to be primarily residential, the Department relied on three cases, *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 145 N.E.2d 80, *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 508 N.E.2d 470, and *Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 513 N.E.2d 587.

In *Avery Coonley School,* our supreme court denied tax exemption to a parcel of property which was part of the school property and had been improved with a building containing two apartments, one of which was occupied by the school custodian, on the ground that no part of the exempt activities of the school was required to be performed on that parcel by the custodian. The court held that the primary use of that parcel was residential. (*Avery Coonley School,* 12 Ill. 2d at 116.) In *Benedictine Sisters,* the court held that three residences located adjacent to the convent grounds and occupied by the convent's maintenance personnel did not meet either of the criteria

for exemption as the residences were not used in furtherance of the organization's exempt purposes, and the employees did not perform their duties in furtherance of the institution's exempt purposes in the building. (*Benedictine Sisters,* 155 Ill. App. 3d at 329.) In *Lutheran Child & Family Services,* the court held that the residence of a maintenance man on the grounds of a residential care and treatment facility for emotionally disturbed children did not qualify for exemption because neither of the two criteria were met. (*Lutheran Child & Family Services,* 160 Ill. App. 3d at 426.) In the present case, the evidence shows that the site manager's office and the garage which comprised one-half of the lower level of the house are used for exempt purposes and were properly found tax-exempt while the remaining portion of the parcel is used as a residence by the site manager and was subject to taxation.

■■ The Girl Scouts argue that the case at hand is distinguishable from the cases upon which the Department relied as the institutions in those cases could continue their programs and maintain their level of services to the users without the on-site presence of their caretakers, while the level of service and quality of the facilities and the security at Camp Greene Wood could not have been maintained by the Girl Scouts without their on-site property manager. However, the evidence shows that the site manager's facility is primarily applied to his personal use and is not used to maintain the quality or availability of the camp's services.

The Girl Scouts assert that in *Illinois Conference of the United Church of Christ v. Department of Revenue* (1988), 165 Ill. App. 3d 200, 518 N.E.2d 755, a caretaker and his wife resided within the boundaries of an outdoor religious camp on a 1.6-acre parcel which was also regularly used for the same type of religious activities ongoing throughout the camp, and the court held that the parcel was exempt from taxation. (165 Ill. App. 3d at 203.) The Girl Scouts argue that as scout functions take place in the site manager's facility, the parcel of land should be wholly exempt. However, the site manager's facility, except for the office and garage which are exempt, was only used for residential purposes.

The Girl Scouts also contend that their case is similar to *Evangelical Alliance Mission v. Department of Revenue* (1987), 164 Ill. App. 3d 431, 517 N.E.2d 1178, where the court exempted an apartment building on a parcel of land adjacent to the Alliance headquarters building which was used to house missionaries home on mandatory furloughs from foreign assignments. The missionaries were not required to stay at this building, and those who did stay paid a nominal

rent. The court found that this apartment building reasonably and substantially facilitated the aims and goals of the religious ministry because their religious duties required that for part of their furloughs the missionaries were to live in close proximity to the headquarters building in order to prepare to return to the field. (164 Ill. App. 3d at 444.) The Girl Scouts argue that the site manager's building facilitates their charitable purpose with its storage, office, and ability to provide a habitat for a 24-hour-a-day presence on the grounds. However, there is not the same interrelationship between the charitable purposes carried on at Camp Greene Wood and the site manager's living needs as there was between the apartment building and the headquarters, whose interrelated parts of a single religious complex were used to train the missionaries living on the premises in furtherance of their religious activities.

In a factually similar case, the court in *Cantigny Trust v. Department of Revenue* (1988), 171 Ill. App. 3d 1082, 1087, 526 N.E.2d 518, found that residences of a park security director, groundskeepers, and maintenance man on the grounds of a park were subject to taxation since the employees did not perform any of their duties at the residences and, although required to live on the grounds as a condition of their employment, they were not required to live on the grounds by the nature of their duties. The Girl Scouts argue that the Department erred in determining that the site manager is not required by his duties to live in the residence as the testimony of the Girl Scout camping services director and council president shows that the reason the camp has been developed and is available on a year-round basis is because of the site manager's 24-hour-a-day presence. However, as the court stated in *Cantigny*:

> "It appears that their extra-hours duties could be handled by hiring additional employees, by requiring the present employees to live in close proximity to the park, or by installing additional security equipment. Although this might entail some additional expense for plaintiff, the issue is whether the employees' duties are reasonably necessary to the performance of its charitable functions, not what is convenient for the institution." *Cantigny*, 171 Ill. App. 3d at 1087.

The Girl Scouts did not prove that the residential portion of the site manager's facility was necessary to the performance of their charitable function. The site manager does not perform any of his duties in the residential portion of the facility, and the nature of his duties does not require him to live at the camp. We find no error in the trial court's affirmance of the Department's decision to deny an ex-

emption to that portion of the site manager's facility used as a residence and to the surrounding property which was not used exclusively for charitable purposes, and we find no error in the Department's decision to exempt only that portion of the property which was found to be used in furtherance of the charitable purposes of the Girl Scouts. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

UNVERZAGT, P.J., and REINHARD, J., concur.